IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SAKIKO FARRAKHAN,

     Plaintiff,

v.

DAL GLOBAL SERVICES d/b/a
DELTA GLOBAL SERVICES,
DELTA AIRLINES, and JOHN
DOES 1–10,

     Defendants.

CIVIL ACTION NO.
1:19-cv-05804-MLB-RDC

## FINAL REPORT AND RECOMMENDATION

Pending before the Court is Defendants DAL Global Services ("Delta Global Services") and Delta Airlines, Inc.'s Motion for Summary Judgment (Doc. 37). In this employment action, Plaintiff Sakiko Farrakhan brings claims for discrimination based on her race, national origin, and religion under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; discrimination based on race under 42 U.S.C. § 1981; and a violation of her right to free association under the First and Fourteenth Amendments to the U.S. Constitution. For the reasons stated below, the undersigned **RECOMMENDS** that the Motion for Summary Judgment be **GRANTED**.

# I.    BACKGROUND

## A. Procedural History

In December 2019, Plaintiff filed the complaint against Delta Global Services, Delta Airlines, Inc., and John Does 1–10 (collectively, the "Defendants").[1] (Doc. 1). In her complaint, Plaintiff, a Japanese-American and member of the Nation of Islam, alleges that she worked for Delta as a security officer. (*Id.* ¶ 7). In December 2018, she was approached by a coworker who recommended that she apply to work as a flight attendant. (*Id.* ¶ 10). Her application was ultimately rejected, but in preparation for it, she researched general information about Delta's airplanes. (*Id.* ¶¶ 12–15). While she was working on January 4, 2019, another Delta employee escorted her to a building on Delta's campus, where she was interviewed by two other individuals about why she had accessed information relating to Delta aircraft, who her husband was, and whether she had provided any information about the aircraft to third parties. (*Id.* ¶¶ 16–21). Afterward, Plaintiff was suspended without pay or an explanation for the interview. (*Id.* ¶ 21).

Defendants filed an answer to the complaint on January 26, 2020, and the case proceeded to discovery in March 2020. (Docs. 4, 12). Discovery concluded in December 2020. (*See* Doc. 33). On January 19, 2021, Defendants filed the instant

---

[1] Delta Global Services and Delta Airlines, Inc. are distinct corporate entities, but because that distinction is not material to the instant motion, the undersigned refers to them both as "Delta" for clarity.

motion for summary judgment, seeking dismissal of all of Plaintiff's claims on the merits.  (Doc. 37).   Plaintiff filed a response brief on February 8, 2021, and Defendants filed a reply brief on February 17.  (Docs. 39, 40).  After reviewing the parties' arguments and the materials submitted in support, the undersigned finds that the instant motion is ripe for review.

### B. Material Facts

The relevant facts of this case are not in dispute.[2]  Plaintiff is a practicing Muslim and a member of the Nation of Islam.  (Pl.'s Statement of Material Facts ("PSMF") ¶¶ 1–2, Doc. 39-2).  Consistent with her faith, she wears a head covering known as a "Tam" and covers the rest of her body, with the exception of her hands, while at work.  (*Id.* ¶¶ 1–3).  Plaintiff's last name "Farrakhan" is commonly used within the Nation of Islam.  (*Id.* ¶¶ 3–4).  Her husband, Khalid Farrakhan, is also an officer in the Nation of Islam.  (*Id.* ¶ 5).

Plaintiff works as a security officer at Delta's corporate headquarters in Atlanta, Georgia.  ("Def.'s Statement of Material Facts ("DSMF") ¶ 2, Doc. 37-1).  Plaintiff's primary job responsibilities include verifying the credentials of employees and authorized guests at Delta's headquarters.  (*Id.* ¶ 3).

---

[2] For the purposes of summary judgment, the undersigned relies primarily on the parties' statements of material facts.  Where the parties do not dispute each other's statements with factual evidence or provide a legal basis to exclude opposing evidence, the undersigned treats those facts as admitted for the purposes of this Report and Recommendation.  *See* LR 56.1(B)(2)(a)(2), NDGa.

In December 2018, George Taylor, Delta's Manager of Internal Security, received a report from another security manager that Plaintiff had accessed technical manuals for aircraft engines and other materials through Delta's internal computer network.[3]  (DSMF ¶¶ 1–2).  According to the report, Plaintiff took notes on the specifications of Delta aircraft and placed them in a personal bag.  (*Id.* ¶ 2).  Taylor and Security Investigator Pamela Fears reviewed security camera photographs overlooking Plaintiff's workstation, which showed that she had looked through Delta Technical Operations Manual with jet engine schematics.  (*Id.* ¶ 6–7).  Afterward, Delta's corporate security department and cyber security team conducted a forensic examination of Plaintiff's computer to determine the extent of the information she had accessed.  (*Id.* ¶ 8).  The investigation revealed that, starting on November 11, 2018, Plaintiff had accessed a large volume of information related to the Boeing 757 and 767 aircraft, which included complex information and technical

---

[3] Plaintiff objects to this report as inadmissible hearsay.  However, the undersigned has not considered those statements for the truth of the matter asserted (i.e. the veracity of the events described in the complaints) but rather for the fact that the report was made, which provided the basis for Taylor's investigation.  *See United States v. Valdes-Fiallo*, 213 F. App'x 957, 960 (11th Cir. 2007) ("Evidence that is not offered to prove the truth of the matter asserted is not hearsay."); *see, e.g.*, *Jefferson v. Burger King Corp*, 505 F. App'x 830, 836 (11th Cir. 2013) (affirming the district court's admission of employee complaints about the plaintiff because "they were offered only to establish that [the employer] had legitimate, non-discriminatory reasons for terminating [the plaintiff's] employment").  In any event, the fact that Plaintiff accessed this information is available entirely through non-hearsay testimony and evidence.

specifications for engines, climate control, electrical and power systems, fuel systems, flight controls, communication systems, and other components. (*Id.* ¶¶ 7, 9, 13). She also accessed documents relating to Delta's flight attendant program. (*Id.* ¶ 11). The information that Plaintiff accessed did not relate to any function of her position as a security officer, (*see* Doc. 37-6), and she was required to use her Delta-provided password to access it. (*Id.* ¶¶ 10, 15).

On January 4, 2019, Taylor and Fears interviewed Plaintiff to discover her reason for accessing the technical information.[4] (*Id.* ¶ 16). Among Plaintiff's stated reasons, she said that she was personally interested in the airplanes, that she was interested in becoming a flight attendant, and that she wanted to learn about the 757 and 767 aircraft in case she brought friends or family to Delta's museum. (*Id.* ¶¶ 19, 25, 28). Despite the fact that Plaintiff's coworker allegedly witnessed her taking notes, Plaintiff denied that she had done so. (Taylor Decl. ¶ 14, Doc. 37-3). She also admitted that she had viewed this information from both her work computer and a personal computer and that she had no technical knowledge that would allow her

---

[4] Plaintiff objects to her responses during this interview as hearsay evidence, but they are admissible as statements of a party-opponent. (Doc. 39-1 ¶ 16); *see* Fed. R. Evid. 801(d)(2)(A). Taylor's questions are likewise admissible as an agent of Delta because he was involved in the decision to suspend Plaintiff. *See* Fed. R. Evid. 801(d)(2)(D); *see Kidd v. Mando American Corp.*, 731 F.3d 1196, 1208–09 (11th Cir. 2013) (citing Rowell, 433 F.3d at 800–01; *Yates v. Rexton, Inc.*, 267 F.3d 793, 802 (8th Cir. 2001) (stating that, for the purposes of determining whether employees were "agents" under Rule 801(d)(2)(D), the plaintiff only needed to show that they were significantly involved in the challenged decision).

to understand this information. (*Id.* ¶¶ 14, 15).  At one point, Plaintiff stated that she was not a spy, even though Taylor and Fears had not asked her. (*Id.* ¶ 12).  However, Taylor and Fears asked her about husband's name, how they met, and how he was employed.  (Farrakhan Dep. at 95, Doc. 37-5).  They also asked whether anyone in her family was a pilot.  *Id.*  Although no one in Plaintiff's family was, she answered that her husband was learning how to sail and that he was previously interested in aviation school.  (*Id.* at 95–96).

After the interview, Taylor and Fears determined that Plaintiff should be suspended from work while the investigation was pending.  (DSMF ¶ 29).  Pursuant to Delta's corporate policy, Plaintiff's pay was also suspended.  (*Id.* ¶ 33).  Approximately three weeks later, Taylor completed his investigation by reviewing all of the information that Plaintiff had accessed and concluded that it did not pose a safety or other risk.  (*Id.* ¶ 34–35).  Plaintiff received permission to return to work on January 23, 2019, and she returned to work on January 28.  (*Id.* ¶ 36).  Plaintiff received full pay for the time missed, but because of the investigation, there was a six-day delay in receiving one paycheck.  (*Id.* ¶¶ 37–38).  Plaintiff remains a Delta employee.  (*Id.* ¶ 37).

## II.    SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating the merits of a motion for summary judgment, the court must "view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party." *Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186, 1192 (11th Cir. 2001).

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). A moving party meets this burden merely by "'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

If the moving party provides a basis for summary judgment, the nonmoving party must respond with record evidence showing a genuine dispute, as mere

conclusions and unsupported statements by the nonmoving party are insufficient. *Id.* at 324; *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). Similarly, "[s]peculation or conjecture cannot create a genuine issue of material fact." *S.E.C. v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). "[A] plaintiff's failure to support an essential element of her case renders all other facts immaterial and requires the court to grant summary judgment for the defendant." *Celotex Corp.*, 477 U.S. at 322–23.

## III.   DISCUSSION

Defendants have moved for summary judgment on each of Plaintiff's claims under Title VII, 42 U.S.C. § 1981, and the First and Fourteenth Amendments of the U.S. Constitution. (*See* Doc. 37-2). As to Plaintiff's constitutional claims, Defendants argue that she cannot show that they are State actors, a necessary prerequisite to those claims. (*Id.* at 13 n.6). As to her discrimination claims under Title VII and Section 1981, Defendants primarily argue, first, that Plaintiff cannot establish that she suffered an adverse employment action—an element of her *prima facie* case—and, second, that she cannot show that their legitimate, nondiscriminatory reasons for her suspension were a pretext for discrimination. (*Id.* at 15–22).

In response, Plaintiff does not address her constitutional claims, but she asserts generally that she has presented a "convincing mosaic" of evidence that the

8

Defendants' actions were a pretext for discrimination. (Doc. 39 at 4–6). She argues that she provided clear reasons for accessing Delta's technical information and that information is readily available online. *Id.* Plaintiff also argues that Taylor and Fears' questions regarding her husband show that their investigation was targeting her based on her religion and her association with her husband. (*Id.* at 5–6).

Before addressing Plaintiff's religious discrimination claims, the undersigned finds that Plaintiff has abandoned her constitutional claims and her discrimination claims based on her race or national origin. When a party moves for summary judgment on all claims, the nonmovant must respond by, at the very least, raising any and all arguments or defenses that precludes judgment for the moving party. *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009). "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Failure to respond to arguments seeking summary judgment for a claim constitutes an abandonment of the issue and warrants entry of summary judgment on that claim. *Cockrell v. Baruah*, No 1:06-cv-600-ECS, 2008 WL 11333465 at *6 (N.D. Ga. Dec. 22, 2008) (citing *Otu v. Papa John's USA, Inc.*, 400 F. Supp. 2d 1315, 1328 (N.D. Ga. 2005)); *Burnett v. Northside Hosp.*,

342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004); *Bute v. Schuller Int'l, Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) ("Because plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned.")); *Welch v. Delta Air Lines*, 978 F. Supp. 1133, 1137 (N.D. Ga. 1997) ("Plaintiff's failure to respond to Defendant's argument alone entitles Defendant to summary judgment on these claims").

Here, Plaintiff has not presented any argument or evidence to support her claims for a constitutional violation of her right to free association. (*See* Doc. 39). Plaintiff does not reference this claim in her brief or respond to the Defendants' argument that they cannot be held liable as private actors. Relatedly, Plaintiff provided two protected grounds in her complaint related to her discrimination claims: her race/national origin as a Japanese-American and her religious identity as a practicing Muslim. (*See* Doc. 1 ¶¶ 1, 7, 19, 26, 31). However, she has only asserted discrimination on the latter ground in her response brief, and she does not reference her race or national origin anywhere in the materials she submitted in opposition to summary judgment. (*See* Docs. 39, 39-1, 39-2). Accordingly, these claims are deemed abandoned for the purposes of summary judgment, and the

undersigned proceeds to the merits of Plaintiff's discrimination claims based only on her religious identity.[5]  *See Resolution Tr. Corp.*, 43 F.3d at 599.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion[.]" 42 U.S.C. § 2000e-2(a)(1).  Under the traditional *McDonnell Douglas*[6] test, "the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis v. City of Union City, Ga.*, 918 F.3d 1169, 1220–21 (11th Cir. 2019).  If the plaintiff succeeds in making out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.  *Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  If the defendant carries

---

[5] In any event, the undersigned agrees that Plaintiff's constitutional claims are not actionable against the Defendants here because there are no facts showing that their conduct is "fairly attributable to the State."  *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).  The undersigned also notes the law is well-established that Section 1981 only provides a remedy for discrimination based on race, not national origin or religion.  *See St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960–61 (11th Cir.1997).

[6] *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

its burden, the plaintiff must demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that "merges with the [plaintiff's] ultimate burden of persuading the [factfinder] that she has been the victim of intentional discrimination." *Id.*

Even if a plaintiff cannot present evidence to satisfy the elements of the *McDonnell Douglas* test, the plaintiff can survive summary judgment if she can identify enough circumstantial evidence to "create[] a triable issue concerning the employer's discriminatory intent." *Hamilton v. Southland Christian Sch.*, 680 F.3d 1316, 1320 (11th Cir. 2012); *see also Schoenfeld v. Babbitt*, 168 F.3d 1257, 1268 (11th Cir. 1999) (stating that, in cases where the facts do not fit neatly into the *McDonnell Douglas* formula, plaintiff can satisfy a *prima facie* case by "any proof of actions taken by the employer from which [a court may] infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations" (quotation marks omitted)).  Therefore, the Eleventh Circuit has recognized that a plaintiff can survive summary judgment if the evidence creates a "convincing mosaic" of discrimination. *See Smith v. Lockheed-Martin Corporation*, 644 F.3d 1321 (11th Cir. 2011).  Regardless of what theory the plaintiff relies upon, the plaintiff must introduce "significantly probative evidence" that the reasons for the employer's decisions were discriminatory to survive summary judgment.

*Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006).

## A. Adverse Employment Action

Under both the *McDonnell Douglas* framework and a "convincing mosaic" theory, the plaintiff maintains the burden to show that the employer took an adverse employment action. *See Wright v. Southland Corp.*, 187 F.3d 1287, 1292 (11th Cir. 1999); *see also Holland v. Gee*, 677 F.3d 1047, 1056 (11th Cir. 2012) (noting that an adverse employment action is not only an element of the plaintiff's prima facie case, but also of the claim itself). In the discrimination context,[7] an adverse employment action is "a serious and material change in the terms, conditions, or privileges of employment." *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1203 (11th Cir. 2013) (quotation marks omitted). "[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Davis v. Town of*

---

[7] Notably, retaliation claims under Title VII impose a lower materiality standard, which makes actionable any adverse employment decision that might "dissuade a reasonable worker from making or supporting a charge of discrimination." *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 54, 57 (2006). Therefore, cases holding that a temporary suspension is a materially adverse employment action in a retaliation context are not directly on point. *See, e.g., Hairston v. Gainesville Sun Pub'g Co.*, 9 F.3d 913, 920 (11th Cir. 1993) (concluding, without discussion, that thirty-day suspension with pay was adverse employment action for purposes of retaliation claim); *but see Siler v. Hancock Cnty. Bd. of Educ.*, 510 F. Supp. 2d 1362, 1381 (M.D. Ga. 2007) (finding that a four-day delay in remitting a paycheck was not materially adverse under the *Burlington* standard).

*Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001), *overruled on other grounds as recognized by Crawford v. Carroll*, 529 F.3d 961, 970–74 (11th Cir. 2008). Negative conduct must satisfy a "threshold level of substantiality" and must impact the plaintiff's employment "in a real and demonstrable way" to be actionable. *Id.* at 1238, 1239; *see also Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1453 (11th Cir. 1998) ("Any adversity must be material; it is not enough that [the employment decision] imposes some *de minimis* inconvenience or alteration of responsibilities.").

The court must examine whether the employment decision was "materially adverse as viewed by a reasonable person in the circumstances," and because the standard is an objective one, "[a]n employee's subjective view of the significance and adversity of the employer's action is not controlling." *Kidd*, 731 F.3d at 1204 (quotation marks omitted). Although the challenged action need not result in a direct pecuniary harm, the adversity of the action "cannot be speculative and must at least have a tangible adverse [effect] on the plaintiff's employment." *Doe*, 145 F.3d at 1445.

Relevant here, this Court has previously considered cases involving paid suspension or administrative leave. *See Brown v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 1:14-cv-00365-LMM-LTW, 2016 WL 4925792, at *9–10 (N.D. Ga. Feb. 12, 2016) (collecting cases). "Typically, courts within this circuit have concluded

14

that a paid suspension or placement on administrative leave for less than a month is not an adverse employment action." *Id.* (citing, in relevant part, *Carrio v. The Apollo Grp.*, No. 1:07-CV-1814-BBM, 2009 WL 2460983, at *3 (N.D. Ga. Aug. 7, 2009); *Fitzhugh v. Topetzes*, No. 1:04-CV-325 8-RWS, 2006 WL 2557921, at *5 (N.D. Ga. Sept. 1, 2006); *Moore v. Miami-Dade Cnty.*, No. 02-33421-CIVGOLD, 2005 WL 3273722, at *11 (S.D. Fla. Sept. 30, 2005)); *see also McDonald v. ST Aerospace Mobile, Inc.*, No. 12-0313-CG-C, 2013 WL 1007712, at *5–6 (S.D. Ala. Mar. 12, 2013) (holding that a rescinded two-month suspension and a disciplinary report were not materially adverse).

After reviewing the relevant authority, the undersigned concludes that Plaintiff's suspension and the accompanying six-day delay in receiving her paycheck were not materially adverse employment actions. On this point, Plaintiff's only argument is that "[s]uspension without pay is unquestionably an adverse employment action." (Doc. 39 at 6). However, the undisputed evidence shows that Plaintiff ultimately received pay for the time that she was suspended, resumed her employment without any change in title or benefits, and received no negative disciplinary consequences. Indeed, the only financial consequence of her suspension was the six-day delay in receiving a paycheck for the period she was placed on administrative leave. (*See* Morgan Decl. ¶¶ 6–7, Doc. 37-4). Although Plaintiff alleges through her declaration that she suffered weight loss, emotional

15

distress, financial hardship, and anxiety, (Farrakhan Decl. ¶¶ 20–21), these subjective considerations are not controlling under Title VII's objective standards. *See Kidd*, 731 F.3d at 1204.

This Court and others have repeatedly found that such circumstances do not rise to materially adverse employment actions. *See Brown*, 2016 WL 4925792, at *9–10. Moreover, to the extent that Plaintiff cites *Akins* in her response brief, the undersigned has found no authority in that case to support her position. *See Akins v. Fulton Cnty.*, 420 F.3d 1293, 1301–02 (11th Cir. 2005). There, the Eleventh Circuit held that "unwarranted reprimands, a negative work evaluation, threat of job loss . . . , threat of suspension without pay, exclusion from meetings, [and] removal of job duties" were not materially adverse, even if they were considered collectively as part of a First Amendment retaliation claim. *Id.* at 1301–02. Plaintiff has provided no reason to deviate from the well-supported conclusion that a temporary suspension with pay accompanied by a six-day delay in receiving her paycheck is not an adverse employment action, and the undersigned has found no independent reason to do so. Based on this finding, the Court need not address Plaintiff's additional arguments on pretext, but the undersigned will address the issue as an alternative basis for reaching the same result.

**B. Defendants' Legitimate, Nondiscriminatory Reasons For Plaintiff's Suspension**

As stated above, if the plaintiff satisfies the *prima facie* test, the defendant bears the burden to produce evidence showing that it had a legitimate, nondiscriminatory reason for its actions. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). At this stage of the analysis, the defendant does not have to persuade the court that it was actually motivated by the proffered reasons; it only has to produce evidence to allow a factfinder to conclude that the employment decision was not motivated by discriminatory animus. *Id.*; *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983) ("[T]he defendant's burden of rebuttal is exceedingly light . . . . At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." (citations and quotations omitted)). Although the defendant's burden is light, its reasons must be "clearly and responsibly specific" so that "the plaintiff can be afforded a full and fair opportunity to demonstrate pretext." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981).

Defendants have offered several bases for Plaintiff's suspension, including (1) Plaintiff accessed a large volume of sensitive information using work-provided credentials for reasons that bore no relationship to her job duties; (2) Plaintiff accessed this information on multiple occasions, from two locations, and over an

17

extended period of time; (3) Plaintiff stated that she was not a spy during her interview without being prompted; (4) Plaintiff's stated reasons were neither logical nor credible, as she had no technical knowledge to understand much of the accessed information nor any intent to attend a technical school.  (Taylor Decl. ¶¶ 15–16, Doc. 37-3).  The undersigned finds that, based on Taylor's affidavit and the record evidence supporting the stated reasons, Defendants have satisfied their burden of production.  Therefore, Plaintiff is responsible for showing that these reasons were merely a pretext for discrimination.

### C. Pretext

To show pretext, the plaintiff must rebut all legitimate nondiscriminatory reasons that the employer has proffered for an employment action.  *Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007).  The plaintiff can rebut those reasons by "pointing to 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the proffered explanation."  *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)).  The plaintiff must then show, not only that the employer's proffered reason was false, but that discrimination was the real reason behind the employer's actions.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).  In other words, the employee must meet an employer's nondiscriminatory reason for a decision "head on and rebut it,"

18

not merely quarrel with the wisdom of the employer's decisions. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265–66 (11th Cir. 2010).

Here, Plaintiff has failed to rebut Defendants' proffered reasons for her suspension. Plaintiff presents two arguments in favor of pretext: (1) that a majority of the questions during her interview were related to her husband and (2) that the information she accessed was publicly available. Plaintiff's first argument does not meet Defendants' reasons for her suspension "head on." *See Alvarez*, 610 F.3d at 1265–66. Even assuming that Taylor and Fears asked her a large number of questions related to her husband and even if Plaintiff's religious affiliation was readily apparent from her clothing, Plaintiff does not dispute that her accessing the technical specifications for two aircraft was unusual, if not suspicious. As Defendants note, Plaintiff could not understand most of this information, accessed it from multiple locations, and her coworkers reported she had taken notes on this information with her. From those facts, a reasonable employer could conclude that there was a risk that she was providing their information to third parties—including her husband, regardless of his religious affiliation. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001) ("[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason as long as the reason is one that might motivate a reasonable employer."). Given the sensitive nature of this information, common

sense dictates that providing it to third parties could have compromised the safety of Delta's aircraft or the intellectual property contained in Delta's internal network. (*See* Taylor Decl. ¶¶ 15–16, 19).

Plaintiff also asserts through her affidavit that the technical information that she accessed through Delta's internal network was also accessible to the public through the internet.  (Doc. 39 at 5; Farrakhan Decl. ¶ 15, Doc. 39-3).  Although under some circumstances a court could credit a party's testimony that general information is available on the internet, the undersigned cannot do so here.  The record shows that Plaintiff accessed a wide range of highly technical specifications for a range of systems in two commercial aircraft.  (*See* Taylor Decl. ¶ 8, Doc. 37-3). While some of this information might be available to the public, the undersigned cannot conclude from Plaintiff's single, conclusory statement that *all* of the data is publicly accessible.  *See Leigh v. Warner Bros, Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("[C]onclusory allegations without specific supporting facts have no probative value.") (quotations omitted)).

If this information were available, Plaintiff was required to support her testimony on this issue with a factual basis.  The Federal Rules of Civil Procedure provide that, at summary judgment, evidence "must be made on personal knowledge" and must "set out facts that would be admissible in evidence" if offered at trial.  Fed. R. Civ. P. 56(c)(4); *see Duke v. Nationstar Mortg., LLC*, 893 F. Supp.

2d 1238, 1244 (N.D. Ala. 2012) (stating that an affiant must provide a basis for her testimony and an affidavit or declaration based on anything less than personal knowledge is insufficient). Plaintiff's testimony regarding her personal knowledge was that she accessed this information only through Delta's internal, password-protected network. (Farrakhan Dep. at 63–64, Doc. 37-5). If this information were available online, nothing prohibited Plaintiff from providing a factual basis to support that assertion or documentary evidence showing its availability. Accordingly, the undersigned does not consider Plaintiff's statement that this information was wholly accessible to the public.[8]

In short, Plaintiff has failed to present any "significantly probative evidence" to allow for a reasonable inference that discriminatory animus motivated her suspension. *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006). At bottom, Plaintiff's argument rests only on speculation that Taylor's investigation targeted her for her religious identity, and without more, her claims cannot survive summary judgment. *S.E.C. v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014) ("Speculation or conjecture cannot create a genuine issue of

---

[8] Defendants ask the Court to apply the "sham affidavit" rule to Plaintiff's declaration, but for the alternative reasons discussed here, the undersigned finds it unnecessary to do so. (Doc. 40 at 6–10).

material fact."). Accordingly, the undersigned finds that Plaintiff's discrimination claims should be dismissed.

## IV. CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendants' motion for summary judgment in full. As to Plaintiff's constitutional claims under the First and Fourteenth Amendments and claims for discrimination based on her race or national origin under Title VII and Section 1981, the undersigned **RECOMMENDS** that they be **DISMISSED WITH PREJUDICE** as abandoned or waived. As to Plaintiff's claim for religious discrimination under Title VII, the undersigned **RECOMMENDS** that it be **DISMISSED WITH PREJUDICE** on the merits. All pretrial matters have concluded with the issuance of this Order and Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), Local Rule 72.1, and Standing Order 18-01. Therefore, the Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

IT IS SO **RECOMMENDED** on this 22nd day of July 2021.

REGINA D. CANNON
United States Magistrate Judge