# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Sakiko Farrakhan,

               Plaintiff,

v.                                Case No. 1:19-cv-5804-MLB

DAL Global Services d/b/a Delta
Global Services, Delta Airlines,
and John Doe 1–10,

               Defendants.

_____/

## OPINION & ORDER

Plaintiff Sakiko Farrakhan sued for discrimination based on race, national origin, and religion under Title VII of the Civil Rights Act of 1964, racial discrimination under 42 U.S.C. § 1981, and a violation of her right to free association under the First and Fourteenth Amendments to the U.S. Constitution.  (Dkt. 1.)  Defendants move for summary judgment.[1]  (Dkt. 37.)  Magistrate Judge Cannon issued a Report and

---

[1] When the Court refers to "Defendants" in this Order, it means DAL Global Services d/b/a Delta Global Services ("DGS") and Delta Airlines ("Delta").

Recommendation ("R&R"), recommending Defendants' motion be granted. (Dkt. 42.) Plaintiff filed objections and a letter. (Dkts. 44; 45.) Defendants responded to her objections and moved to strike the letter. (Dkts. 46; 48.) The Court overrules Plaintiff's objections, adopts the R&R, and grants Defendants' motion to strike. The Court also sua sponte dismisses John Doe 1–10 under the fictitious party pleading rule.

## I.   Background

Plaintiff is a practicing Muslim who, consistent with her faith, wears a head covering known as the "Nation of Islam Tam" and fully covers the rest of her body, except for her hands. (Dkt. 39-2 ¶¶ 1–2.) Her husband, Khalid Farrakhan, is a top official for the Nation of Islam. (*Id.* ¶ 5.) Plaintiff is employed by DGS as a security officer at Delta's corporate headquarters in Atlanta, Georgia. (Dkt. 37-1 ¶ 2.) Her responsibilities include verifying employee and guest credentials to ensure authorized access at Delta's property. (*Id.* ¶ 3.)

In December 2018, Delta's Manager of Internal Security, George Taylor, received a report from another security manager that Plaintiff had accessed technical manuals for aircraft engines and other materials through the internal computer network and was taking notes about the

manuals and placing her notes in a personal bag.[2]  (*Id.* ¶¶ 4–5.)  Taylor and Security Investigator Pamela Fears reviewed photographs from a security camera overlooking Plaintiff's workstation.  (*Id.* ¶ 6.)  The photographs showed her looking through Delta's Technical Operations Manual which contained jet engine schematics.  (*Id.* ¶¶ 6–7.)  Delta's Corporate Security Department opened an investigation and asked Delta's Cyber Security Team to conduct a forensic examination of her computer to identify the information she had accessed.  (*Id.* ¶ 8.)  The forensic examination revealed that, beginning on November 11, 2018, Plaintiff had accessed a large volume of information about Delta's B757 and B767 aircrafts.  (*Id.* ¶ 9.)  The information she accessed was wholly unrelated to her position as a security officer, and she had to use her Delta-provided password to access it.  (*Id.* ¶¶ 10, 15.)

---

[2] Plaintiff objected to the report as inadmissible hearsay.  (Dkt. 39-1 ¶¶ 4–5.)  Magistrate Judge Cannon overruled the objection because she did not consider the statement for the truth of the matter asserted (i.e., the veracity of the events described in the report) but for the fact that the report was made, which provided the basis for Taylor's investigation. (Dkt. 42 at 4 n.3.)

On January 4, 2019, Taylor and Fears interviewed Plaintiff.[3]  (*Id.* ¶ 16.)  During the interview, Plaintiff said she accessed the information because she was personally interested in the aircrafts, she was interested in becoming a flight attendant, and she wanted to learn about the aircrafts in case she brought friends or family to Delta's museum.  (*Id.* ¶¶ 19, 25, 28.)  She admitted that the information she accessed required "engineering or other kinds of very specialized training in order to understand" and she had no technical knowledge that would allow her to understand the information.  (*Id.* ¶¶ 22–24.)  At one point during the interview, Plaintiff said she was not a spy, even though Taylor and Fears had not asked if she was.  (Dkt. 37-3 ¶ 12.)  She accessed the information from both her work and home computer.  (*Id.* ¶ 14.)  Even though Delta employees allegedly witnessed her taking notes of the information, Plaintiff denied that she had done so.  (*Id.*)  Taylor and Fears asked about

---

[3] Plaintiff objected to her responses during the interview as inadmissible hearsay evidence.  (Dkt. 39-1 ¶ 16.)  Magistrate Judge Cannon overruled the objection because her responses are admissible as statements of a party-opponent.  (Dkt. 42 at 5 n.4 (citing Fed. R. Evid. 801(d)(2)(A)).)  She also found that Taylor's questions during the interview are admissible as an agent of Delta because he was involved in the decision to suspend Plaintiff.  (*Id.* (citing Fed. R. Evid. 801(d)(2)(D)).)

her husband's name, where and how they met, and his occupation. (Dkt. 36 at 95:18–25.) They also asked whether anyone in her family was a pilot, and Plaintiff responded that her husband was learning how to sail and that he was previously interested in aviation school. (*Id.* at 95:22–96:7.)

After the interview, Taylor and Fears decided Delta should suspend Plaintiff from work until completion of their investigation. (Dkt. 37-1 ¶ 29.) Consistent with corporate policy, Delta also suspended her pay. (*Id.* ¶ 33.) About three weeks later, Taylor completed the investigation and concluded the information Plaintiff accessed did not present a significant safety or other risk. (*Id.* ¶¶ 34–35.) Plaintiff received permission to return to work on January 23, 2019 and did so on January 28, 2019. (*Id.* ¶ 36.) Plaintiff received full pay for the time she missed. As a result of the investigation, however, she received one of her paychecks six days late. (*Id.* ¶¶ 37–38.) Plaintiff remains an employee of DGS. (*Id.* ¶ 37.)

## II.   Motion to Strike the Letter

Plaintiff and her husband mailed a letter to the Court. (*See* Dkt. 45.) Defendants move to strike this letter from the docket. (Dkt. 48.)

They contend "[i]t is a highly improper letter that makes repeated anti-Semitic slurs towards one of Defendants' counsel in this case[,] allegations of racism towards the U.S. Magistrate Judge for the R&R[,] and other highly improper, threatening[,] and possibly criminal statements." (*Id.* at 2 (internal citations omitted).)  The Court agrees the letter is highly inappropriate.  It also violates two Local Rules.  Local Rule 7 states "[c]ommunications to judges seeking a ruling or order . . . shall be by motion and not by letter." *See* Local Rule 7.4, NDGa. It further states that all documents filed with the Court must be in the form of a pleading, *see* Fed. R. Civ. P. 7(a), or a motion, *see* Fed. R. Civ. P. 7(b).  Local Rule 7 precludes communication by letter.

Local Rule 83.1(D)(2) provides limited circumstances in which a represented party may file pro se documents in a civil case:

> When an attorney has appeared on behalf of a party, the party may not appear or act on the party's own behalf in the action or proceeding.  However, a party may do so if he or she provides notice to the attorney of record and the opposing party of the party's intention to appear on his or her own behalf and obtains an order of substitution from the Court. Notwithstanding this rule, the Court may in its discretion hear a party in open court even though the party is represented by an attorney.

6

*See* Local Rule 83.1(D)(2), NDGa.   Plaintiff is represented by counsel. There is no indication she provided notice to the attorney of record and the opposing party.  She also did not obtain an order of substitution from the Court.  Her pro se letter is simply not permitted.  All of this is to say the Court will not consider the letter, even apart from the letter's hateful, highly inappropriate content.   And even if the Court were to rule otherwise, Plaintiff's letter would not change the outcome of the Court's ruling, as the letter is largely incoherent and consists of inappropriate ramblings.

The Court grants Defendants' motion to strike (Dkt. 48).

## III.   R&R and Objections

### A.    Standard of Review

The district court must "conduct[] a plain error review of the portions of the R&R to which neither party offers specific objections and a de novo review of the Magistrate Judge's findings to which [a party] specifically objects."  *United States v. McIntosh*, No. 1:18-cr-00431, 2019 WL 7184540, at *3 (N.D. Ga. Dec. 26, 2019); *accord* 28 U.S.C. § 636(b)(1) ("[T]he court shall make a de novo determination of those portions of the [R&R] to which objection is made."); *United States v. Slay*, 714 F.2d 1093,

1095 (11th Cir. 1983) (per curiam) (explaining that plain error review is appropriate in absence of objection). "Parties filing objections to a magistrate's [R&R] must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). After conducting the required review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## B.   Discussion

Plaintiff sued for discrimination based on race, national origin, and religion under Title VII, racial discrimination under 42 U.S.C. § 1981, and a violation of her right to free association under the First and Fourteenth Amendments. (Dkt. 1.) Defendants moved for summary judgment on all claims. (Dkt. 37-2.)

### 1.   Abandoned Claims

Magistrate Judge Cannon found Plaintiff abandoned her constitutional claims and her discrimination claims based on race and national origin. (Dkt. 42 at 9.) In regard to the former, Plaintiff presented no argument or evidence to support her claim that Defendants

violated her right to free association.  (Dkt. 39.)  She did not mention this claim in her brief, nor did she respond to Defendants' argument that they cannot be held liable for such claims since they are private actors.  (*Id.*)  In regard to the latter, Plaintiff asserted discrimination based on race, national original, and religion in her complaint but, in her response brief, asserted only discrimination based on religion.  (Dkts. 1; 39 at 5-6.)   She did not reference her race or national origin anywhere in the materials she submitted in opposition to summary judgment.  (Dkts. 39; 39-1; 39-2.)

Magistrate Judge Cannon concluded Plaintiff abandoned all of these claims for purposes of summary judgment.   (Dkt. 42 at 10.)  Plaintiff does not object to this finding.  (Dkt. 44.)  The Court sees no plain error in it.  Defendants engaged Plaintiff as to the legal and factual basis for her claims when they moved for summary judgment.   The burden was thus on Plaintiff to respond to Defendants' arguments.  Defendants, as the movants, have the ultimate burden of showing they are entitled to summary judgment, but Plaintiff cannot avoid Defendants' meritorious factual and legal arguments simply by refusing to engage.  Doing so constitutes an abandonment of those claims.  *See*

*Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." (internal citation omitted)); *Bute v. Schuller Int'l, Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) ("Because [the] plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned."); *Welch v. Delta Air Lines, Inc.*, 978 F. Supp. 1133, 1137 (N.D. Ga. 1997) ("Plaintiff's failure to respond to Defendant's argument alone entitles Defendant to summary judgment on these claims.").

## 2.  Remaining Claim

The only remaining claim is Plaintiff's Title VII disparate treatment claim based on religion.  Title VII prohibits employers from "discriminat[ing] against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion."  42 U.S.C. § 2000e–2(a)(1).  In the absence of direct evidence of discrimination, courts apply the burden-shifting

framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Smith v. Acting Sec'y, U.S. Dep't of Homeland Sec.*, 819 F. App'x 774, 776–77 (11th Cir. 2020) (per curiam).   Under *McDonnell Douglas*, a plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing (1) she belongs to a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified to perform the job, and (4) her employer treated similarly situated employees outside of her class more favorably.   *Id.*   If a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *McDonnell Douglas*, 411 U.S. at 802.  If the defendant meets his burden, the plaintiff must then show the defendant's proffered reason was merely a pretext for unlawful discrimination.  *Id.* at 804; *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981).  But if the plaintiff's claim fails under the *McDonnell Douglas* framework, she may still overcome summary judgment by providing a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.  *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (establishing that the *McDonnell Douglas*

framework "is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case"); *see also Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1273 n.1 (11th Cir. 2021) (per curiam) ("We have held that the 'convincing mosaic' analysis is an alternative to the *McDonnell Douglas* framework for a plaintiff to satisfy her burden to show on circumstantial evidence that her employer discriminated against her." (citing *Smith*, 644 F.3d at 1328)).

### a)   *McDonnell Douglas*

Magistrate Judge Cannon found Plaintiff had not established a prima facie case because Plaintiff did not suffer a materially adverse employment action.  (Dkt. 42 at 15.)  Plaintiff was suspended on January 4th and permitted to return on January 23rd.  She received full pay for the time she was suspended.  Her only inconvenience was a six-day delay in receiving one paycheck.  Because "the undisputed evidence shows Plaintiff ultimately received pay for the time she was suspended, resumed her employment without any change in title or benefits, and received no negative disciplinary consequences," Magistrate Judge Cannon found no adverse employment action occurred.  (*Id.*)  Plaintiff

objects, citing *Akins v. Fulton County*, 420 F.3d 1293, 1301–02 (11th Cir. 2005), and arguing that it is "well established by this circuit that a suspension without pay is unquestionably an adverse employment action." (Dkt. 44 at 6.) *Akins* contains nothing to support her position. In *Akins*, the plaintiffs alleged they suffered the following adverse employment actions: unwarranted reprimands, a negative work evaluation, threat of job loss through dissolution of the contracting division, threat of suspension without pay, exclusion from meetings, removal of job duties (followed by reprimands for not completing that work), and constructive discharge. *Akins*, 420 F.3d at 1301. The Eleventh Circuit held that, even when considered in the aggregate, these actions (exclusive of constructive discharge, which the court addressed separately) are not adverse. *Id.* Other than her conclusory statement and citation to *Akins*, Plaintiff offered no other argument or caselaw to support her position. (Dkt. 44 at 6.) Indeed, Plaintiff addressed none of the caselaw cited in the R&R that show "paid suspension or placement on administrative leave for less than a month is not an adverse employment action." *Brown v. Bd. of Regents of the Univ. Sys. of Ga.*, No.

1:14-CV-0365-LMM-LTW, 2016 WL 4925792, at *9–10 (N.D. Ga. Feb. 12, 2016), *adopted by* 2016 WL 5419787 (N.D. Ga. Mar. 1, 2016).

After conducting a de novo review, the Court overrules Plaintiff's objection and adopts Magistrate Judge Cannon's finding.  Plaintiff's nineteen-day-suspension does not, as a matter of law, rise to the level of a materially adverse employment action given the fact that she resumed her employment without any change in title or benefits, received no negative disciplinary consequence, and identified no other impact besides a six-day delay in the receipt of one paycheck.  *See McDonald v. ST Aerospace Mobile, Inc.*, No. 12-0313-CG-C, 2013 WL 1007712, at *5–6 (S.D. Ala. Mar. 12, 2013) (holding that the plaintiff's "suspension cannot qualify as an 'adverse employment action' for Title VII purposes because it was rescinded two months later . . . with the original disciplinary report removed from [the plaintiff's] personnel file and [the plaintiff] receiving full back pay"); *Dickerson v. SecTek, Inc.*, 238 F. Supp. 2d 66, 79–80 (D.D.C. 2002) (concluding that the suspensions were not adverse employment actions where plaintiffs were reinstated and received full back pay).

Magistrate Judge Cannon then stated that she need not address the next two steps of the *McDonnell Douglas* framework because Plaintiff could not establish a prima facie case. (Dkt. 42 at 16.) The Court agrees. *See Gunning v. Runyon*, 3 F. Supp. 2d 1423, 1429 (S.D. Fla. 1998) ("As we find that Plaintiff has not established his prima facie case for maintenance of a Title VII religious discrimination disparate treatment claim, we need proceed no further in our analysis." (citing *Hawkins v. Ceco Corp.*, 883 F.2d 977, 981 (11th Cir. 1989))). But Magistrate Judge Cannon performed the *McDonnell Douglas* burden-shifting analysis to provide an alternative basis for dismissing the claim. (Dkt. 42 at 16.) The Court does the same.

Defendants offered several reasons for Plaintiff's suspension, including (1) she accessed a large volume of sensitive information using work-provided credentials for reasons that bore no relationship to her job responsibilities; (2) she accessed this information on multiple occasions, from two locations, and over an extended period of time; (3) she stated that she was not a spy during her interview without being prompted; (4) her stated reasons were neither logical nor credible, as she had no technical knowledge to understand most of the accessed information nor

15

any intent to attend a technical school. (Dkt. 37-3 15–16.) Magistrate Judge Cannon found Defendants satisfied their burden of production. (Dkt. 42 at 18.)

The Court agrees. It is well established that a defendant's burden at this stage of the inquiry is "exceedingly light," meaning "the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is 'merely one of production, not proof.'" *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983) (quoting *Lee v. Russell Cnty. Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir. 1982)). Defendants presented evidence Plaintiff accessed sensitive information she had no business accessing (or ability to understand) by using her employee credentials on multiple occasions and from multiple computers (including from her home), that she provided no reasonable explanation for her actions, and that she (strangely) volunteered she was not a spy during an interview, even though no one raised the issue. Defendants certainly presented evidence of a legitimate, nondiscriminatory reasons for its decision to suspend Plaintiff while investigating her unauthorized and suspicious conduct.

In the final stage of the analysis, the employee must show that the proffered reasons are a pretext for unlawful discrimination. *Burdine*, 450 U.S. at 256. Plaintiff presented two arguments: (1) most of the questions during her interview related to her husband and (2) the information she accessed was publicly available. As to the first argument, Magistrate Judge Cannon held that it did not meet Defendants' reasons for her suspension "head on." (Dkt. 42 at 19.) "Even assuming that Taylor and Fears asked her a large number of questions related to her husband and even if Plaintiff's religious affiliation was readily apparent from her clothing," Magistrate Judge Cannon reasoned, "Plaintiff did not dispute that her accessing the technical specifications for two aircrafts was unusual, if not suspicious." (*Id.*) The Court agrees with this conclusion as well. Under the *McDonnell Douglas* analysis, Plaintiff must meet Defendants' proffered reason "head on and rebut it." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1265–66 (11th Cir. 2010). Plaintiff's first argument does not address the fact that she could not understand most of the information she accessed, she accessed the information on multiple occasions, and she took notes on the information and placed those notes in her personal bag. Having concluded Plaintiff had no logical

explanation for accessing the information or ability to understand it, evidence Taylor and Fears tried to determine whether she was accessing the information for someone else—like her husband—does not, in any way, rebut Defendant's nondiscriminatory reason for its decision to suspend Plaintiff pending the investigation.  It certainly does not show that Defendants' proffered reasons were false or that discrimination was the real reason behind Defendants' actions.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).  If anything, this evidence supports the inadequacy of Plaintiff's explanation for accessing Defendants' sensitive information, thereby enhancing Defendants' nondiscriminatory explanation for the employment decision.

Plaintiff's second argument is based on her affidavit where she stated that "[t]he specifications of the Boeing 757 and 767 are readily available on the internet."  (Dkts. 39 at 5; 39-3 ¶ 15.)  Magistrate Judge Cannon said that while some of the information might be available to the public, she "cannot conclude from Plaintiff's single, conclusory statement that *all* of the data is publicly accessible."  (Dkt. 42 at 20.)  Magistrate Judge Cannon explained that, if this information was publicly available, Plaintiff needed to support her testimony with, for example, documentary

evidence showing its availability on the internet. (*Id.* at 20–21.) Accordingly, Magistrate Judge Cannon did not consider Plaintiff's statement that the information was publicly available. (*Id.* at 21.) Plaintiff does not object to Magistrate Judge Cannon's analysis on her second argument. (*See* Dkt. 44; *see also* Dkt. 46 at 6 n.4.) The Court finds no plain error in that conclusion.

In reaching that decision, Magistrate Judge Cannon found it unnecessary to apply the sham affidavit rule as requested by Defendants. (*Id.* at 21 n.8.) As an alternative basis for its adoption of the Magistrate Judge's recommendation in this regard, the Court thinks it appropriate to apply that rule, at least to prevent Plaintiff from creating an issue as to whether all the information she accessed was publicly available. Under the sham affidavit rule, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). Defendants concede that *some* information about the aircrafts is available online. (Dkt. 40-1 at 9

n.1.)   But to the extent Plaintiff is saying in her affidavit that the technical information she accessed was publicly available, Defendants contend "she provides no citation for this allegation and the allegation is contrary to her deposition testimony." (*Id.*; *see also* Dkt. 46 at 6 n.4.)   The Court agrees.   Plaintiff testified in her deposition that the information was *not* publicly available: She was asked if the information she accessed was on "Delta's SharePoint drives," and she responded, "Yes."   She was then asked if the information was on the "worldwide web," and she answered, "No." (Dkt. 36 at 63:19–64:1.)   Her unsupported statement to the contrary in an affidavit created to negate her deposition testimony may be disregarded for purposes of summary judgment.   *See, e.g.*, *Mitchell v. Presbyterian Homes of Ga., Inc.*, 835 F. App'x 522, 523–24 (11th Cir. 2020) (per curiam) (disregarding affidavit that "flatly contradicted . . . earlier sworn statements" and "offered no explanation for the glaring inconsistencies" nor for the delay in changing her testimony).   So, while she may rely on her affidavit to establish some information was available to the public, she cannot use it to establish that all of it was.   Since the undisputed evidence shows Plaintiff accessed non-public information (in the circumstances already discussed),

Plaintiff thus does not carry her burden of showing Defendants' explanation for the employment decision was a pretext for unlawful discrimination.

### b) Convincing Mosaic

As explained above, a plaintiff can also survive summary judgment if the record, viewed in the light most favorable to the plaintiff, presents a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker. *Smith*, 644 F.3d at 1328; *Holley v. Ga. Dep't of Corr.*, 845 F. App'x 886, 890 (11th Cir. 2021) (per curiam). "A 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (en banc). "[A]s long as the circumstantial evidence raises a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper." *Smith*, 644 F.3d at 1328.

While Magistrate Judge Cannon does not use the phrase "convincing mosaic" in her analysis, she did conclude that Plaintiff "failed to present any 'significantly probative evidence' to allow for a reasonable inference that discriminatory animus motivated her suspension." (Dkt. 42 at 21.) She reasoned that Plaintiff's claim rests only on speculation that the investigation targeted her based on her religious identity, and without more, her claims cannot survive summary judgment. (*Id.*) Plaintiff objects, arguing that a reasonable jury could conclude that the interrogation was predicated on Plaintiff's religious association with the Nation of Islam because most of the interview questions were about her husband and his involvement with the Nation of Islam and she was asked to give detailed information about her husband's background and how she met him. (Dkt. 44 at 4.) Defendants contend Plaintiff's argument does not rebut (or even address) Delta's reasons for suspending her or the reasons for asking about her husband in the interview. (Dkt. 46 at 6.) According to Taylor, he asked about her husband after learning that she was accessing Delta's technical information from her home, and he was trying to fully assess who she was sharing the information with and what might have been done with the information. (Dkt. 37-3 ¶ 19.) He

22

reasoned that "[t]o not have asked these questions would have been unusual and led to an incomplete investigation." (*Id.*)

The Court conducts a de novo review. During her deposition, Plaintiff testified that the interview questions focused mainly on her and her conduct and the only questions they asked about her husband related to his name, where and how they met, and what his job was. (Dkt. 36 at 72–102.) In the affidavit she submitted in response to summary judgment, however, Plaintiff stated that "[d]uring the interrogation, majority of the questions asked were about [her] husband and his occupation." (Dkt. 39-3 ¶ 17.) Plaintiff argues that Magistrate Judge Cannon "was bound to accept that during the interrogation of Plaintiff majority of the questions to Plaintiff were about her husband and her husband['s] occupation with the Nation of Islam." (Dkt. 44 at 5.) But even assuming most of the questions Taylor and Fears asked were about her husband, she failed to present a convincing mosaic of circumstantial evidence. Defendants asking questions about her husband is not enough to establish a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional religious discrimination. She did nothing to cast sufficient doubt on Defendants' proffered reasons for suspending

her or asking about her husband in the interview.  *Compare Holley*, 845 F. App'x at 891 (holding that the plaintiff did not present a convincing mosaic of circumstantial evidence where, among other things, he did not "cast sufficient doubt on the DOC's proffered nondiscriminatory reasons"), *with Lewis*, 934 F.3d at 1185–86 (holding that the plaintiff presented a convincing mosaic of circumstantial evidence where, among other things, there was "ample evidence" suggesting the defendant's stated reasons for firing the plaintiff were pretextual).  Plaintiff accessed the information on multiple occasions from different locations, she could not understand most of it because she did not possess the technical knowledge, and Delta employees reported that she took notes on the information.   A reasonable employer could conclude that she was providing the information to third parties, such as her husband.  Her argument that the investigation targeted her for her religion rests on speculation, which is not enough to create a genuine issue of material fact. *See Bryant v. U.S. Steel Corp.*, 428 F. App'x 895, 897 (11th Cir. 2011) (per curiam) ("[T]he non-moving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" (citing *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 249–50 (1986))).  The Court overrules Plaintiff's objection.

## IV.  Fictitious Party Pleading

With summary judgment granted to Defendants, the only remaining defendants are John Doe 1–10.  "As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam).  Thus, claims against fictitious or non-existent parties are usually dismissed.  *Smith v. Comcast Corp.*, 786 F. App'x 935, 939 (11th Cir. 2019).  The Eleventh Circuit, however, "created a limited exception to this rule when the plaintiff's description of the defendant is so specific as to" make the fictitious name, "at the very worst, surplusage." *Richardson*, 598 F.3d at 738 (quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir. 1992)).  This exception does not apply here.  The complaint says, "John Doe 1–10 ('Defendant Doe'), in their individual capacities.  Plaintiff will amend his [sic] complaint upon identifying John Doe." (*See* Dkt. 1 at 6.)  That description wholly fails to provide enough specificity to determine the identity of John Doe 1–10.  *Compare Richardson*, 598 F.3d at 738 (finding the complaint's description of John Doe—"John Doe (Unknown Legal

Name), Guard, Charlotte Correctional Institute"—to be insufficient to identify the defendant among the many guards employed at the Charlotte Correctional Institute), *with Dean*, 951 F.2d at 1216 (finding the complaint's description of John Doe—"Chief Deputy of the Jefferson County Jail"—to be sufficient to identify the head of the Jefferson County Jail). Accordingly, Plaintiff's description did not render her "John Doe 1–10" label mere "surplusage." Thus, under the general rule, dismissal of the claims against John Doe 1–10 is appropriate. *See Cook v. Corizon, LLC*, No. 2:17-CV-178-SMD, 2019 WL 2076392, at *6 (M.D. Ala. May 10, 2019) (sua sponte dismissing defendants under the fictitious party pleading rule).

## V. Conclusion

The Court **GRANTS** Defendants' motion to strike (Dkt. 48) and **DIRECTS** the Clerk to **STRIKE** the letter filed as Document 45.

The Court **OVERRULES** Plaintiff's objections (Dkt. 44) and **ADOPTS** the R&R (Dkt. 42). The Court **GRANTS** Defendants' motion for summary judgment (Dkt. 37), and all claims are dismissed against DGS and Delta.

The Court sua sponte **DISMISSES** John Doe 1–10 under the fictitious party pleading rule.  No defendants remain in this case.  The Clerk is **DIRECTED** to **CLOSE** this action.

**SO ORDERED** this 14th day of September, 2021.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

27